**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| TRACY BURNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:25-cv-00442-MTS |
| | ) | |
| FIRMAN POWER EQUIPMENT, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Tracy Burns's Motion to Remand. Doc. [15]. Defendant Firman Power Equipment, Inc. ("Firman") has filed its Response in Opposition, Doc. [20],[1] and Plaintiff filed a Reply in Support, Doc. [21]. This matter is fully briefed and ready for decision. For the reasons that follow, the Court will deny Plaintiff's Motion. Because the Court concludes that Defendant City of Desloge (the "City") is fraudulently joined, the Court will enter herewith an Order of Partial Dismissal that dismisses the City from this action without prejudice.

## I.   **Background**

This wrongful-death action arises out of the use of an allegedly defective portable generator during a summer storm. On August 2, 2023, Joy Evon Thurston and her son,

---

[1] Both Plaintiff's Memorandum in Support of her Motion, Doc. [16], and Firman's Response in Opposition exceed fifteen numbered pages, and neither party sought leave to file overlength briefs beforehand. This violated the Eastern District of Missouri Local Rules. E.D. Mo. L.R. 4.01(D). The Court warns the parties to follow the requirements of the Local Rules in all aspects of this litigation going forward. Failure to do so may result in sanctions or other disadvantage.

Peter Fred Selzer, were at home when severe weather caused a power outage.  Doc. [8] ¶ 5. Additionally, rainwater flooded into their basement due to a drainage problem stemming from the City's "failure to properly construct, implement and/or maintain a proper sewer/storm management system to drain water from the street."  *Id.* ¶ 6.   Without electricity, Mr. Selzer could not operate his sump pump to drain the basement, so he borrowed a neighbor's portable generator to supply the necessary power.  *Id.* ¶ 7.  That generator was Firman's Model P03605.  *Id.* ¶ 8.  Because the generator could not be used in wet weather, Mr. Selzer chose to place it in a breezeway adjacent to the home.  *Id.* Tragically, and within a short period of time, the generator produced high levels of carbon monoxide that fatally poisoned Mr. Selzer and Ms. Thurston (together, the "Decedents"). *Id.* ¶ 11–12.

Plaintiff alleges that Mr. Selzer used the generator in a manner that Firman intended or "reasonably anticipated."  *Id.* ¶ 37.  Plaintiff further alleges that carbon monoxide poisoning is a well-known risk among portable-generator manufacturers like Firman.  *Id.* ¶ 13.  In addition, Plaintiff contends that Firman's Model P03605 is defective as designed because it lacks an automatic shutoff at certain carbon monoxide levels, consistent with industry standards.  *Id.* ¶¶ 24–25, 29, 31, 34.  According to Plaintiff, Firman also failed to provide adequate warnings and instructions about the dangers of carbon monoxide emissions.  *Id.* ¶¶ 35–36.  As a result, Plaintiff has suffered the loss of two family members,[2] the reasonable value of their services and companionship, and related pecuniary

---

[2] Ms. Thurston was Plaintiff's mother, and Mr. Selzer was Plaintiff's brother.  *Id.* ¶ 2.

losses and expenses.  She also seeks to recover for the fear, pain, and suffering that Decedents experienced.  *See, e.g.*, *id.* ¶ 45.

Based on the foregoing, Plaintiff filed a Petition for Wrongful Death against Firman and the City in St. Francois County Circuit Court.  Doc. [8]; *see also* Mo. Rev. Stat. § 537.080.    In it, she asserts what she labels as six counts: (1) Strict Liability – Design/Manufacturing Defect against Firman (Count I); (2) Strict Liability – Failure to Warn against Firman (Count II); (3) Negligence – Design/Manufacturing Defect against Firman (Count III); (4) Negligence – Failure to Warn against Firman (Count IV); (5) Negligence against the City (Count V); and (6) Dangerous Condition of Public Property against the City (Count VI).[3]  Soon after service, Firman removed the action to this Court, arguing that federal subject-matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a). Doc. [1] at 4–5 (citing 28 U.S.C. § 1441(a)).  Recognizing that § 1332(a) requires complete diversity of citizenship among the parties, Firman contends that Plaintiff both fraudulently joined and fraudulently misjoined the City to this action, and the Court should therefore disregard the City in its jurisdictional analysis.  *Id.* at 8–18.  From Firman's perspective, once the City is excluded, the remaining parties are completely diverse, and the

---

[3] Technically speaking, Plaintiff has only one claim, a claim for wrongful death under Missouri law.  *See Lawrence v. Beverly Manor*, 273 S.W.3d 525, 528 (Mo. banc 2009) ("The wrongful death statute and the precedent cases clearly consider wrongful death to be a cause of action separate and distinct from the underlying tort.").  The counts she provides are more properly understood as her legal theories that make Defendants liable for Decedents' deaths.  *See Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 766 (Mo. Ct. App. 2008) ("Under Missouri's wrongful death statute, 'the right to sue for wrongful death is conditioned on the fact that the decedent could have maintained an action for damages for the injuries sustained had he or she survived.'"); *see also* 34B Robert H. Dierker & Richard J. Mehan, *Missouri Practice Series* § 55:2 (2025 ed.) (explaining that "the elements of a wrongful death action will be identical to the elements of the underlying tort claim, with the significant differences that the wrongful death action entails proof of causation of the decedent's death, and recoverable damages are those specified in the statute").

requirements of § 1332(a) are satisfied. *Id.* at 7. Plaintiff disagrees and has filed a Motion to Remand, Doc. [15], arguing that the City is a proper party to this action and thus destroys the complete diversity that § 1332(a) requires, Doc. [16].

## II.    <u>**Legal Standard**</u>

The party seeking removal and opposing remand bears the burden of establishing federal subject-matter jurisdiction. *See In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993); *see also* 28 U.S.C. § 1441(a) (allowing defendants to remove civil, state-court actions "of which the district courts of the United States have original jurisdiction" to federal court). To establish federal diversity jurisdiction, a removing defendant has to show that the amount in controversy exceeds $75,000, and the action is between "citizens of different States." 28 U.S.C. § 1332(a). Thus, a state-court action is usually nonremovable if it is between a plaintiff and a defendant who share the same citizenship because "complete diversity" is lacking. *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007).

But "[c]ourts have long recognized fraudulent joinder as an exception to the complete diversity rule." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). "The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 893 (8th Cir. 2014) (quoting *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012)). "A party has been fraudulently joined if there is 'no

reasonable basis in fact and law' for the claim brought against it." *Murphy*, 699 F.3d at 1031 (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)).

"However, if there is a 'colorable' cause of action—that is, if the state law might impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder." *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1079 (8th Cir. 2021) (citation omitted).   When undertaking this analysis, the Court resolves "all facts and ambiguities in the current controlling substantive law in the plaintiff's favor." *Id.*[4]   As ever, "federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction in proper cases." *Beavers v. Ark. State Bd. of Dental Examiners*, 151 F.3d 838, 840 (8th Cir. 1998) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).   The question for the Court is whether this action is one of those "proper cases." *Id.*

## III.   **Discussion**

Arguing for remand, Plaintiff emphasizes that a removing defendant bears a "heavy burden" to show that a non-diverse party has been fraudulently joined.  Doc. [16] at 11–12.  Plaintiff contends that, after all facts and state-law ambiguities are construed in her favor, "there is arguably a reasonable basis for predicting that the state law might impose liability [on the City] based upon the facts involved." *Id.* at 11 (citing *Filla*, 336 F.3d at

---

[4] Because the Court agrees with Firman that the City is fraudulently joined to this wrongful-death action, the Court does not reach Firman's fraudulent-misjoinder arguments.  In any event, the U.S. Court of Appeals for the Eighth Circuit has never adopted and appears to disfavor such an argument. *See Prempro*, 591 F.3d at 619, 624 n.8 (describing fraudulent misjoinder as a "discredited theory" and observing that "the preferable course of action" might be for a defendant to "challenge the misjoinder in state court before it [seeks] removal").

810).  This is because, according to Plaintiff, she has "sufficiently alleged that the [City's] . . . conduct in flooding [the] home served as concurrent negligence which contributed to cause the deaths of Plaintiff's family."  *Id.* at 16.  Firman disagrees, asserting that there is no "reasonable basis in fact and law" for Plaintiff's claim against the City because, (1) the City owed no duty under the circumstances, Doc. [20] at 8–10, and (2) even assuming the City owed a duty and was negligent in constructing and maintaining its sewer system, its negligence clearly did not proximately cause the injuries at issue in this case, Doc. [1] at 17–18; Doc. [20] at 3–8.[5]  The Court addresses both arguments in turn.

### A.    Duty

"In any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff."  *Lopez v. Three Rivers Elec. Coop.*, 26 S.W.3d 151, 155 (Mo. banc 2000).  "Whether a duty exists is purely a question of law."  *Id.*  "The duty owed is generally measured by whether or not a reasonably prudent person would have anticipated danger and provided against it."  *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. banc 1990).  In other words, the analysis is "forward-looking" and asks, "whether the defendant should have foreseen a risk in a given set of circumstances."  *Lopez*, 26 S.W.3d at 156 (citing *Zuber v. Clarkson Const. Co.*, 251 S.W.2d 52, 55 (Mo. 1952)).

---

[5] Neither party disputes, for purposes of the present Motion, that Plaintiff's claim against the City proceeds under an applicable sovereign-immunity exception.  *Compare* Doc. [16] at 12–13, *with* Doc. [20] at 3.

Missouri law has long imposed a duty on municipalities "to maintain [their] sewers in a reasonably safe condition." *See Hannan v. Kansas City*, 173 S.W. 703, 705 (Mo. Ct. App. 1915) (acknowledging that municipalities owe a duty of "ordinary care"); *accord Hawkins v. Springfield*, 186 S.W. 576, 577 (Mo. Ct. App. 1916) ("[A] city, having constructed and put in operation a system of sewers, is required to keep same in a reasonably safe and effective condition and to use ordinary care and diligence to keep same free of obstructions likely to cause damage."). Firman concedes that certain categories of harm are "foreseeable to an entity tasked with designing, constructing, and maintaining a sewer system." Doc. [20] at 10. But, according to Firman, the harm suffered in this case is too far removed from the City's construction or maintenance of its sewer system and, therefore, the Decedents' carbon monoxide poisoning was not a "risk" that the City "should have foreseen" under the circumstances. *Lopez*, 26 S.W.3d at 156; *see* Doc. [20] at 10.

Firman's argument ignores the well-settled principle that, "[i]n determining foreseeability for the purpose of defining duty, it is immaterial that the *precise* manner in which the injury occurred was neither foreseen nor foreseeable." *Pierce v. Platte-Clay Elec. Co-op., Inc.*, 769 S.W.2d 769, 776 (Mo. banc 1989). Even when "the actual chain of events in [a given] case is remarkable," what matters for purposes of assessing a legal duty is the "general type of event or harm" and whether "there is some probability of injury sufficiently serious that an ordinary person would take precautions to avoid it." *Id.* Upon review of the circumstances in this case, it is at least colorable under Missouri law that a municipality's duty to exercise ordinary care in constructing and maintaining its sewer system would extend to those who are injured while taking steps to mitigate flooding that

the municipality's sewer system allegedly caused.  In other words, that general type of harm is arguably within "the orbit of the danger" reasonably perceptible to an entity charged with constructing and maintaining a sewer system.  *See Krause*, 787 S.W.2d at 710 (explaining that a duty is owed to those within "the orbit of the danger as disclosed to the eye of reasonable vigilance" (quoting *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 100 (N.Y. 1928) (Cardozo, C.J.)).  Therefore, the Court cannot conclude that the City is fraudulently joined for lack of a legal duty owed.

### B.    Proximate Cause

Firman's proximate-cause arguments, however, fare better.  "In all tort cases, the plaintiff must prove that each defendant's conduct was an actual cause, also known as cause-in-fact, of the plaintiff's injury."  *D.J. ex rel. R.J. v. First Student, Inc.*, 707 S.W.3d 581, 586 (Mo. banc 2025) (quoting *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 113 (Mo. banc 2007)).  "A defendant's conduct is the cause in fact of a plaintiff's injuries where the injuries would not have occurred 'but for' that conduct."  *Heffernan v. Reinhold*, 73 S.W.3d 659, 664 (Mo. Ct. App. 2002) (citing *Robinson v. Mo. State Highway & Transp. Comm'n*, 24 S.W.3d 67, 77 (Mo. Ct. App. 2000) (per curiam)).  Such but-for causation, though, "is an absolute minimum" for negligence liability.  *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862 (Mo. banc 1993) ("Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with.").  An additional limit is needed because but-for causation "will include items that are causal in fact but that would be unreasonable to base

liability upon because they are too far removed from the ultimate injury or damage." *Id.* at 865.

Proximate cause supplies that limit. *See Heffernan*, 73 S.W.3d at 664 ("Proximate cause . . . is a limitation the law imposes upon the right to recover for the consequences of a negligent act."). "Once actual causation has been established, the issue becomes one of . . . proximate cause—that is, whether the defendant should be held liable because the harm is the reasonable and probable consequence of the defendant's conduct." *D.J.*, 707 S.W.3d at 586 (citation omitted). "This analysis 'relies upon hindsight to determine whether the precise manner of a particular injury was a natural and probable consequence of a negligent act.'" *Id.* (quoting *Lopez*, 26 S.W.3d at 156). In contrast to actual causation, proximate cause is "a 'legal determination' that presents a question of law for the [trial] court." *Id.* at 586 (quoting *Poage v. Crane Co.*, 523 S.W.3d 496, 513 (Mo. Ct. App. 2017)); *accord Kutilek v. Union Pac. R.R.*, 454 F. Supp. 2d 871, 875 (E.D. Mo. 2006) (Limbaugh, J.) ("Proximate cause is a question of law for the trial court.").

"When the acts of two or more persons combine to injure a person, 'there is a question as to whether the initial act of negligence was the proximate cause of the injury or whether there was an efficient, intervening cause.'" *D.J.*, 707 S.W.3d at 587 (quoting *Krause*, 787 S.W.2d at 710). "An intervening cause must be a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury." *Id.* (quoting *Gathright v. Pendegraft*, 433 S.W.2d 299, 308 (Mo. 1968)); *accord  Hollister v. A. S. Aloe Co.*, 156 S.W.2d 606, 608 (Mo. 1941) ("If

there is an intervening act of negligence of another party, itself the efficient, direct, and proximate cause of the injury, it becomes in law the sole cause.").

> If a prior and remote cause does nothing more than give rise to an occasion by which an injury is made possible, and there intervenes between that cause and the injury a distinct and unrelated cause of injury, a negligence action does not lie, even though the "but for" test is satisfied.

*D.J.*, 707 S.W.3d at 587 (quoting *Tompkins v. Cervantes*, 917 S.W.2d 186, 191 (Mo. Ct. App. 1996)).  However, an "intervening cause will not preclude liability where it is itself a foreseeable and natural product of the original negligence." *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 724 (Mo. Ct. App. 2015) (internal quotations omitted).

Firman argues that Decedents' deaths by carbon monoxide poisoning cannot be considered the reasonable and probable consequence of the City's negligent design, construction, or maintenance of its drainage systems because intervening events—that is, the power outage, Mr. Selzer's acquisition of an allegedly defective generator, and his decision to use it in a covered space adjacent to his home—rendered the City's actions "too attenuated from the ultimate injury at issue."  Doc. [1] at 17; Doc. [20] at 3–8.  Thus, according to Firman, even if the City's negligence caused Decedents' basement to flood, the City's conduct "did nothing more than furnish the condition or give rise to the occasion by which [the Decedents' carbon monoxide poisoning] became possible."  *Id.* (quoting *Esmond v. Bituminous Cas. Corp.*, 23 S.W.3d 748, 753 (Mo. Ct. App. 2000) (Stith, J.)).  As a result, Firman argues that the City is fraudulently joined to this wrongful-death action

because "there is no reasonable basis in law or fact for a state court to [impose] liability" on the City for Plaintiff's injuries.[6] *Id.* at 18.

The Court agrees. Decedents' deaths—and Plaintiff's corresponding injuries—were caused by carbon monoxide poisoning. Firman's portable generator emitted the carbon monoxide, and Firman's allegedly defective design, its failure to warn, and the generator's placement "in a breezeway adjacent to [the] home" caused the elevated carbon monoxide levels to which Decedents succumbed. Doc. [8] ¶¶ 8, 10–12, 34–35. Even with all facts and legal ambiguities taken in Plaintiff's favor, these were the "responsible, direct, proximate, and immediate" causes of Decedents' deaths. *D.J.*, 707 S.W.3d at 587.[7]

Plaintiff does not dispute the causal chain outlined above; rather, she argues that it should extend to include the City's alleged misconduct. After all, Mr. Selzer would not have attempted to operate his sump pump but for the flooding allegedly caused by the City's sewer design or maintenance. Without the need for a sump pump, there was no need to borrow a generator—much less one that was defectively designed and devoid of adequate warnings—and there was no need to operate such a generator in the breezeway adjacent to his home. *See* Doc. [16] at 17–18. Moreover, she asserts that the generator-

---

[6] Plaintiff's injuries are those from Decedents' wrongful deaths. *See* Mo. Rev. Stat. § 537.090. She does not purport to bring any claims against the City for the property damage that the flooding might have caused. Indeed, there is no indication that she would have standing to bring those claims. *See* Mo. Rev. Stat. § 537.010.

[7] This is significant for both Count V (Negligence) and Count VI (Dangerous Condition of Public Property). Count VI asserts tort liability against the City under a specific exception to sovereign immunity. *See* Mo. Rev. Stat. § 537.600.1(2) ("Injuries caused by the condition of a public entity's property if . . . the injury directly resulted from the dangerous condition."). The Missouri Supreme Court has determined that the words, "directly resulted," are synonymous with proximate cause. *Smith v. Coffey*, 37 S.W.3d 797, 801 (Mo. banc 2001).

related, carbon-monoxide-based circumstances above were themselves foreseeable and natural products of the City's negligence, so they cannot be considered intervening causes for purposes of proximate cause. Doc. [16] at 17–18. According to Plaintiff, "[t]hat a party with a flooded home and no electricity will require the use of a generator, with its attendant and known risks in the context of use during wet, severe weather, is reasonably foreseeable." *Id.* at 18. She alleges that "deaths from carbon monoxide routinely follow severe weather events and flooding that cause power outages. Therefore, [D]ecedents' injuries and deaths were the natural and probable consequence of [the City's] negligence in causing the flooding of [their] home." Doc. [8] ¶ 78.

The problem for Plaintiff is that, even with all facts and legal ambiguities drawn in her favor, the factual scenario merely establishes the City's alleged negligence as a but-for cause of Decedents' deaths. That is not enough. As discussed above, although but-for causation is necessary to establish negligence liability, it is insufficient standing alone. *See Callahan*, 863 S.W.2d at 862 (describing actual causation as "an absolute minimum"). Proximate cause, on the other hand, asks "whether *the precise manner of a particular injury* was a natural and probable consequence of a negligent act." *D.J.*, 707 S.W.3d at 586 (quoting *Lopez*, 26 S.W.3d at 156)) (emphasis added). And that is where Plaintiff's claims against the City fall short, even under the permissive fraudulent-joinder standard. *See Thompson v. R.J. Reynolds Tobacco Co.*, 760 F.3d 913, 918 (8th Cir. 2014) (describing it as "less demanding").

Here, the precise manner of Decedents' deaths was carbon monoxide poisoning as a result of Firman's allegedly negligent design, its inadequate warnings, and Mr. Selzer's

own decision to use Firman's generator in a particular location.  These intervening acts, in part prompted only by a power failure caused by "recent storms," Doc. [8] ¶ 5, were distinct and unrelated to the City's construction and maintenance of its sewer system.  Even if, as Plaintiff suggests, the City could arguably foresee that flooding from its sewer system would (1) prompt citizens to take self-help measures to mitigate the damage and (2) cause power outages necessitating the use of portable generators, *see Esmond*, 23 S.W.3d at 753 ("[A]n intervening cause will not preclude liability if it is itself a foreseeable and natural product of the original negligence."), the precise intervening events above lie outside this arguable scope.

Further, these precise circumstances satisfy the factors that Missouri courts have applied to determine when an intervening act severs proximate cause.  *See Wilson v. Image Flooring, LLC*, 400 S.W.3d 386, 399 (Mo. Ct. App. 2013) (setting forth six considerations relevant to a court's superseding-cause determination (quoting Restatement (Second) of Torts § 442)).  Firman's allegedly negligent acts and Mr. Selzer's decision to place the Model P03605 in the breezeway adjacent to his home operated completely independently from the flooding that the City allegedly caused.  *See id.* (asking whether the "intervening force is operating independently of any situation created by the actor's negligence").  Firman's alleged conduct was "wrongful" and highly culpable according to Plaintiff's Petition.[8]  *See id.* (asking whether the intervening force was due to "a third person's act,"

---

[8] Mr. Selzer's alleged conduct was no less wrongful.  Indeed, carbon monoxide poisoning "is one of the more significant and well-known risks of injury related to homeownership."  *Am. Nat. Prop. & Cas. Co. v. Wyatt*, 400 S.W.3d 417, 426–27 (Mo. Ct. App. 2013).  For years, it has been common knowledge that exhaust fumes from internal combustion engines contain toxic carbon monoxide that must be properly ventilated.  *See Charlton v. Day Island Marina, Inc.*, 732 P.2d 1008, 1011 (Wash. Ct. App. 1987) ("[W]e

whether the act was "wrongful," and its "degree of culpability"); *see also* Doc. [8] ¶ 38 (alleging Firman's "deliberate and flagrant" misconduct).

Most significantly, Decedents' fatal carbon monoxide poisoning was plainly harm "different in kind from that which would otherwise have resulted from the [City]'s negligence," and those swift, deadly consequences were "extraordinary rather than normal" when viewed in relation to the basement flooding that the City allegedly caused. *Wilson*, 400 S.W.3d at 399. Therefore, the above conduct constitutes an intervening cause that, as a matter of law, was the "responsible, direct, proximate, and immediate cause of [Plaintiff's injuries]" in this wrongful-death action. *Id.* at 398.

## IV.   Conclusion

In sum, multiple independent factors break the causal chain here as a matter of law: a power outage, the use of a negligently designed generator that lacked adequate warnings, and Mr. Selzer's decision to place it in the breezeway of Decedents' home. The City's alleged negligence "d[id] nothing more than give rise to [the] occasion by which [Decedents' carbon monoxide poisoning was] made possible." *Tompkins*, 917 S.W.2d at 191. There is no indication that a Missouri court "might" hold otherwise. *See Henson*, 3 F.4th at 1079. Thus, Firman has met its burden to show that there is no "reasonable basis" under Missouri law to hold the City liable in this wrongful-death action. *Wivell*, 773 F.3d

---

believe it is common knowledge that the exhaust fumes from an internal combustion engine are toxic, particularly if confined to an enclosed space[.]"); *Zuercher v. N. Jobbing Co.*, 66 N.W.2d 892, 897 (Minn. 1954) (calling it "common knowledge among laymen" that carbon monoxide from running engines is "extremely dangerous" and "ordinary care" requires that "affirmative action for [its] expulsion" be taken); *see also* Doc. [8] ¶ 78 (alleging that "[t]here is a significant risk of carbon monoxide poisoning relating to the use of portable generators").

at 893.  Therefore, in light of the Court's "virtually unflagging obligation" to exercise its jurisdiction in this case, *Beavers*, 151 F.3d at 840, the Court will dismiss the City without prejudice,[9] and it will exercise diversity jurisdiction over the remaining claims, *Wivell*, 773 F.3d at 893.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Tracy Burns's Motion to Remand, Doc. [15], is **DENIED**.  An Order of Partial Dismissal that dismisses Defendant City of Desloge without prejudice will be entered herewith.

Dated this 25th day of March 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[9] Responding to the Supreme Court's recent discussion in *Hain Celestial Group, Inc. v. Palmquist*, this Court will certify its dismissal of the City as a "partial final judgment under Federal Rule of Civil Procedure 54(b)." 607 U.S. ----, 146 S. Ct. 724, 732 n.3 (2026) (identifying procedural mechanisms that would "reduce wasteful litigation" and hasten the review of a district court's fraudulent-joinder determination). The Court concludes that "there is no just reason for delay" with respect to this threshold jurisdictional matter.  Fed. R. Civ. P. 54(b).